Good morning, Your Honors. My name is Matthew Winter. I'm from the Federal Public Defender Office in Hawaii. I'd like to reserve two minutes if possible. Your Honor, in this case there are multiple errors by the district court, most of which were evidentiary errors of things brought in against Mr. Borg. Those culminated then in a jury instruction error which caused the wrong standard to be used against Mr. Borg, and then these things were You know, you've thrown up a lot of dust, but I didn't see anything of significance. Why don't you focus on what you think is the worst thing that the seizures did? I think the worst thing Just go right for the jugular. Okay. I think there's the first thing is the documents, then. I think the documents in this case were the linchpin that the prosecutor used over and over again to prove this case against Mr. Borg. I think each and every one of them were admitted erroneously. First, we'll start with the relevancy of the arrest, fingerprints and mugshot. There's no reason why these should have been brought into this case. In no way I'm sure it's the same guy. He refused to stipulate that he's the same guy. If he had stipulated he's the same guy, he had a chance to keep it all out. He didn't. Well, I don't see a reason why End of the story. I mean, the prosecution now has to prove that this guy is now 15 years later, he's in Hawaii, he probably looks a good bit different, has to prove to the jury that, in fact, it's the same guy. Well, if you look for, I'm guessing there must be more than one Stephen Borg in the United States. Yeah, but then they had the best evidence possible because they flew out the deputy that actually arrested him in New York, Deputy Asher, who was then able to stand up and point So your argument is it's cumulative? No, I think it is cumulative, but cumulative does not mean harmlessness. If it's cumulative, it has to be harmless. I don't think so at all, because this is also prejudicial. Bringing in someone's mugshot with the various tattoos, showing fingerprint cards, those are things that I think the prosecutor wants What are the crimes? What are the crimes? Drug crimes? I mean, obviously, if, I mean, the fact that he was arrested, he wouldn't be under a bench warrant if he hadn't been arrested. And the jury can imagine that he would have been booked and mock shots would have been taken. So I don't see where this is. Now, how did the other arrests come in? There were convictions or arrests or what? No, there were just arrests in this case. So, and that's the other thing. The arrests bring up the proposition that the jury is led to believe that he's guilty, led to believe that the presumption of innocence, at least at that case, has been thrown out. That's just inherent in, you know, trying to prove he's a fugitive. How else can you do that? The easiest way possible was for them to try to bring in the court records to show that he didn't show up in court and have the person prove it. The easier way would have been for you to stipulate that he's a fugitive. Well, then I'd stipulate to an element of the offense, and I don't think that's my job. Well, then if you don't stipulate to it, the prosecutor's got to prove it beyond a reasonable doubt. Sure. And the way that he could prove it is the best evidence he has. But he's not confined to the, you know, the way you think he should do it. Well, I think there's two ways you can do it. There's the way that doesn't cause Mr. Borg undue prejudice, and there's the way that is actually proving under Rule 401 and 402 what has – makes it more probable that Borg left New York, what makes it more probable that he harbored the intent. You know, this is why we have district judges, and this was a very experienced district judge. That's true. Who exercised her discretion. It was Judge Gilmore, wasn't it? That's correct, the chief judge. I read too many cases. And was she chief judge at the time? But it doesn't matter. No. I mean, one way or the other, she was – she is a very experienced and well-respected district judge, and she exercised discretion. This is what trial judges are supposed to do. And it's not that you don't have a plausible argument. It's an argument that a district judge might have accepted. And on the other hand, you could have guaranteed, as Justice Schumer points out, you could have guaranteed that these things don't come in by stipulating. Well – Those are the tough choices defense lawyers make. Well, then let me move to the second issue, which is the document of the court proceeding that I think violates the Confrontation Clause. The government brought in a – This is your Crawford argument? Correct. The government brought in a transcript of a court proceeding that Mr. Borg was not present at. You have the judge being testimonial, right? I think it is. I don't think something could be more testimonial than this. Was the judge under oath? I'm sorry. Was the judge under oath? Was the judge under oath? Or the lawyer. Or the lawyer. The lawyer was not under oath. No. That might be true, because it's just a standard court proceeding. But I think the analogy in this – And in the court proceeding, wasn't it obvious that there's other things that you might have objected to, but the very fact your client wasn't there is also indicated in the court proceeding? Correct. And therefore, he doesn't testify one way or the other. And therefore, having that court proceeding and having his lawyer have to stand up and say, he's not here, is all it needed to be. And that's all they used it for, he's not here. Well, I think if we look at the testimonial cases from Crawford, this is much more analogous to cases of preliminary hearings, of statements made by witnesses, of other statements rather than the ones pointed out by the government in the Feliz case. I think that this happened in a court of law – The thing about witnesses is they have some involvement in the transaction, and so there is the fear that they might fabricate for reasons of their own. But what is the reason does the judge have to fabricate or the lawyer? This is to affect, possibly get Mr. Borg convicted of something 15 years later in Hawaii? No. I think one of the big problems is that Mr. Borg wasn't a party to this. The person has just proposed – it's just assumed that the person's a lawyer. I think Mr. Borg really had no stake here, so couldn't make any claim here. And then the claim that is made is that he was – The reason they had to introduce the fingerprint card because you're still claiming he's not a party to that. No. The reason – they didn't need the fingerprint card whatsoever because they had Deputy Asher to stand up and say that. You used, you know, 60 percent of your time. Yes. I'd like to hear your argument for a little bit on the instruction. Thank you. The instructions in this case was – what we asked the court to do is that there's two forms of intent for being a fugitive. And that is, what intent did the person harbor at the time they left the State? In this case, what intent did Mr. Borg have when he left the State of New York? And then second, that he must still have that same intent when he's possessing the firearm. The Statute 922 is – He can't form that intent later? The intent after he leaves the State? Yeah. No. I don't think so. He has to leave the State for the purpose of being a fugitive, a purpose of running from the law, and then he has to still have that intent when he has the firearm. 922G is not a was-he-a-fugitive statute. It's is-he-a-fugitive statute. And if you look at the cases, especially the kind of coalescence of Durkin and Collins, I think it really melds those two things together. Because there's a problem when the mens re relates back so far. In this case, 15 years. And Mr. Borg's case might be the perfect case why such a mixture of Collins and Durkin is needed. Because in Borg, there's testimony from Agent Asher that when Agent Asher called Borg in Hawaii years after the arrest in Honolulu, Borg told him, I thought that was completely taken care of. So it's a situation where, if anything, it shows that that intent must still hold true here in 2005 and 2006 when he's arrested. Just because someone leaves the State, circumstances change. Cases can be dropped. Reasons can change around the prosecution. Well, he told the C.I. that he was a fugitive. That was contested. But whether or not he told the C.I. there was a fugitive that ---- I don't understand why your lawyers keep insisting on burning up your time saying things that are totally irrelevant. Now, explain to me, what does the fact that something was contested at trial have in terms of relevance and appeal? I'd rather not waste my time, but ---- No, no. You take the time to explain it to me. Why it matters that it was contested at trial. Here's why. Because we're talking about a jury instruction issue. You're talking about a factual issue. The reason I answer that ---- We have to accept the facts as found by the jury. And on this issue, there's no contest as to the instruction. The witness testified that your client told you he was a fugitive. There's nothing about the instruction that affects the jury's finding as to what that witness said. Right? I don't believe that. I think the fact that the jury wasn't told the proper instruction, wasn't told that he ---- On the question of whether or not the witness truthfully said, Bork told me he's a fugitive, you think the instruction has some bearing on that particular factual issue? I think if this instruction was the way we asked the Court to have it ---- Why don't you answer my question? I do think it has a bearing. How? I think it has a bearing because then the jury would more likely weigh the fact that they had Deputy Asher's statement about Bork saying he ---- The question is whether or not they believe the informant when the informant says he told me he's a fugitive. How does this instruction have a bearing on that finding? Because maybe they didn't have to reach that issue. Maybe they decided just because he left New York, that's enough, and they could convict him. They didn't have to weigh the evidence between Asher and the CI in this case. So they didn't have to get to that later analysis. So that's why I think it's different. But it wouldn't affect their determination of that issue if they did reach it, right? I don't think we know that, because the jury could have said we don't need to touch that issue. All we need to think is did he leave New York with the intent to avoid prosecution? We believe he did. Case closed. But if they did reach it, the instruction wouldn't have any bearing on whether they found or believed the witness or not. If they did reach the issue and decided that the CI told the truth, maybe. It would depend on evidence. How would this instruction affect it? I think I – if they believed the CI 100 percent, how would this instruction affect it? If they got to the question of whether the CI told, truthfully told, that Bork told him he was a fugitive, how would this instruction cause them one way or the other to believe or disbelieve the witness? I think then they would have deliberated on who to believe, the CI or Deputy Asher. Right. And how would that affect which one they believe? I don't think it would, but at least it would get them to that analysis. So isn't the rule that we have to take all the facts in the light most favorable to the winning party? Yes. And so, insofar as the jury reaches this issue, they would have found that the informant, the CI, the Billy, the CI, when he said that your client is – is – is – said he was a fugitive. I don't think we – Why is it we can't accept that for purposes of appeal? I don't think we can accept that because, as the instructions lie, the jury didn't necessarily have to get to that point. So we don't know what the jury – Well, there's lots of times the jurors might not reach issues, and nevertheless, we always presume that contested facts, unless they're affected by an instruction, unless the instruction itself tends to skew what the jury finds, we always assume that the – that the facts are as the winning party presented them. Well, I think here that's why we call jury instruction issues structural error, because this is a case where we don't know. The jury could have been chopped off at the knees at the point when they board-left New York and decided, our issue's over, we don't need to reach what happened past the 90s. But we have to accept that your client said, I'm a fugitive. We have to accept that. That's consistent with a jury of verdict, and that's – that's what the – what the government's witness said. And, you know, that totally undermines your argument. I disagree with that, because I don't think the jury – I mean, you do agree that the jury found that your client, in fact, said that. That takes care of the mens rea issue. It doesn't matter whether it happened here or 15 years later or 25 years later. If he tells somebody, I'm a fugitive, he still has the same state of mind, right? Sure. If the jury found that point, but I don't think they necessarily found that point in this case. I think they were stuck between a CI who had problems with his background, was impeachable, versus a deputy who wasn't as much. So these two had different testimony. The jury didn't need to get there because the instruction didn't ask them to. It's a bad fact for you, isn't it? I don't think so. I think it's a fact of timing that almost proves my point, that why this instruction is needed is because we have to have some insight as to – Because you want to make sure the jury doesn't get to the CI. No. But the CI, of course, really, his testimony answers the very question you want to have answered, and that is whether or not his state of mind has changed. If your client is still going around telling people, I know today I'm a fugitive from justice, that really sort of totally undermines your argument on the instruction. If that is true and the argument was given, then the jury would have lawfully deliberated on that issue and come to a correct verdict. They weren't able to here. Thank you. We'll hear from the government. Thank you. May it please the Court, my name is Lou Bracco. I'm an assistant U.S. attorney from Honolulu, and I was trial counsel in this case. And to just comment on one thing that Judge Tashima referred to, Deputy Asher, we didn't know whether Deputy Asher would be able to identify Borg when he came to court because Asher was coming from New York and he hadn't seen Borg in 15 years. And he said, maybe I'll identify him. So the arrest records were very relevant to prove Borg's identity as the same Stephen Borg who was arrested in New York in the event that Asher couldn't identify him. Now, as it turned out, Asher, when he looked at him in court, and he hadn't seen him for 15 years before that, said, oh, yeah, I realize that he's the same guy. So he did identify him. So the arrest records were relevant. The other thing I'd like to address briefly is the jury instruction in the case law on fugitive status. As I'm sure you realize, the case law is pretty old on fugitive status. Most of the cases that are cited in the briefs were fugitive status interpreted under the statute of limitations cases. In other words, where somebody was saying, well, the statute of limitations had run, and then the government was arguing, oh, no, it didn't run because the defendant was a fugitive. And there's only one case I think that's from this court that's decided under 922G2, which is the firearms section. And I think that was the Collins case. And that, I believe, supports our position because in that case it's cited foully, which is the older case from this circuit, with approval. And basically it said that the fact that the defendant moved to Mexico and stayed there when he knew he was wanted by authorities, even though he didn't conceal himself when he was in Mexico, was sufficient to establish that he was a fugitive from justice. I remember foully. Well, it's a 1994 case, Judge, I think. Mr. Brocco, you know, there were a lot of, to put it charitably to your case, there were a lot of questionable evidentiary calls in this case. And I think a lot of them were because maybe you, you know, you forced it upon the court. But nonetheless, the alarm seemed to be unnecessary. Your Honor, for instance, it's pretty clear to me that that transcript of what happened in the, in New York, you know, where the Borg didn't show up, whether or not it violates the Confrontation Clause, it's clearly hearsay, isn't it? I don't believe so, Judge. Why not? Because all it was offered for was to show that the warrant was issued, that Borg didn't appear. To prove the truth of the matter asserted. That Borg didn't appear. And the assertion was, well, my client's not here. Well. Right? And that's what you wanted to prove, that he wasn't there. Isn't that hearsay? No, because what we offered it for was to show that he didn't appear. So the words, what the judge said at the time was really not relevant one way or another, which is the fact that the judge said, I'm issuing a warrant, Borg didn't appear. Well, what about what the lawyer said? Well, it's the same thing. It didn't matter what the lawyer said, as long as the judge said, I'm issuing a warrant. And, in fact, as you know, Judge Gilmour redacted out what the lawyer, most of what the lawyer said about contacting the father. Well, it's a double hearsay. Well, right. But that was all redacted out because the only reason that we were offering it. Non-appearance in court was not an element of the federal crime, was it? I'm sorry, Your Honor. Non-appearance in state court was not an element of the federal crime. It is the fact there was a warrant out for him. Well, it is. Whether, in fact, the warrant was valid or not, whether, in fact, he showed up and he was hiding in the corner or something, it's not an element of the federal crime. The fact is it was a warrant, and he fled while the warrant was outstanding, and the fact that there might have been, you know, he might have been in the room with a little old lady or something and, I mean, it doesn't matter. Technically, that's right. We probably could have just relied on the warrant, but since we are the ones who have to prove beyond a reasonable doubt that he didn't appear or that a warrant was issued. The thing is it does not go to an element of the crime. Whatever else was said in the courtroom, the only thing that mattered was the legally operative language that's saying a warrant will issue. And that was legally operative language, which turned Mr. Bork from a regular person to somebody who is subject to an arrest warrant. I mean, a regular person. I mean, somebody who is not subject to an arrest warrant or somebody who is not subject to an arrest warrant. And that is not a question that's true or false. That is a question of law, when the judge says a warrant will issue, it issues. It's correct, Your Honor. The validity of the warrant or any defenses to the warrant are of no interest at all. In hindsight, the introduction of that testimony where the judge said warrant issued, no appearance by defendant, may have been cumulative to the evidence that there was a warrant in hindsight. That's correct. So, but it's certainly not prejudicial because, as you know, the issue was whether or not there was a warrant, whether he did not appear. And so at most it was cumulative, but it wasn't harmless. I mean, it wasn't harmful. It was harmless. Well, it's actually beyond that. I mean, it doesn't really matter whether he appeared or not. I mean, let's say the judge was just not looking in the right place in the courtroom and mistakenly issued a warrant. All you have at that point is a mistakenly issued warrant. You're still not allowed to leave the State while the warrant is out, even though you may have a perfectly good defense. No, I don't agree with that, Judge, because I think that if the defendant came forward and offered evidence that the warrant was issued in error, let's say there were two Steven Borgs and somehow there was a mix-up, then he could have an argument that he didn't have intent to avoid prosecution, which is an element we have. Clearly the warrant was not directed at him. That would certainly be a defense. If he was a, you know, I'm the wrong guy. No, but if the warrant issued in error, if the judge issued the warrant in some error, and he just checked the wrong box, the defendant can come forward and said, I didn't intend to avoid prosecution. I intended to leave the State. I knew there was a warrant. But I didn't intend to avoid prosecution because the warrant was a mistake. So that's kind of the way I looked at it when I introduced it, because I was anticipating that there would be a defense case, and I was trying to prove my case beyond a reasonable doubt. So at the point where I was evaluating it, I didn't believe it was cumulative. I thought it was necessary, and I don't – didn't know that I was going to get to introduce it under a criminal case. I think for a prosecutor being commendably generous, I actually don't think it matters whether the warrant is in fact – has defects. I mean, if it's defective in its face, if it names the wrong person, or if it lacks the judge's signature or something of that sort, then that might be a defense. But saying, I really was there, but I was in the bathroom, that's a defense, and you have to – you can't just leave the State and ignore the warrant. I think what you have to do is come into state court and present your defense. Well, I would have been happy to have you as a trial court on that issue, J.J. Well, I'm just saying it's just commendable. I'm always very pleased to see a prosecutor taking a sort of broader view of these things. The only thing I'd like to add about the instruction on the law is I think in terms of this continued concealment argument or active concealment argument, I think the cases that are cited in the brief from this circuit say that the mere fact that the person leaves one jurisdiction and goes to another jurisdiction and stays there, that is evidence of active concealment. In other words, the fact that he knows about the charges and then – But the C.I. helps you a lot. Oh, absolutely. That was very good evidence, and I tried to use it as the best I could. I don't – I'm not sure I understand your argument. You say that's very good evidence of active concealment, but are you conceding that active concealment is an element of the crime? No. I'm just saying that, you know, the cases are old and somehow they're not that clear in terms of what concealment is. The defense is basically saying, in Mr. Borg's case, that the defendant, in order to be a fugitive from justice, has to continue concealment. In other words – and I use the word actively conceal. In other words, he has to hide his true identity, maybe change his name, live under an assumed name. And I'm saying that's not the case. I'm saying those older cases, when they talk about taking active steps of concealment, they – what actually happened in those older cases is the person picks up from one jurisdiction and moves to another jurisdiction, and those are the active steps of concealment. And none of the cases that I found require the person, once he gets into the second jurisdiction, to take additional affirmative steps after having moved there. There doesn't seem to be a case that's just directly on point, is there? Not that I found, Judge. And like I said, the cases – In other words, the cases you're talking about, they sort of say, well, those steps you're talking about are sufficient or they're helpful to prove fugitive status, but they don't really say that they're necessary, right? That's right. There's no case that I found that says – that even addresses what the person has to do in the second jurisdiction that he flees to or that he moves to. And I think the closest case is the Collins case, where it's talking about the Fowley case, and it basically says the mere fact that he stays in Mexico, even though he doesn't hide his identity in Mexico, is enough to give him the status of a fugitive. And I think that's important, because the Collins case is a 922-G2 case. In other words, it is a firearms case. And unless the Court has any other questions, I have nothing to say. Of course, if you accept the CI's testimony, none of that matters. Well, that's right, because the CI gives you evidence that – Gives you an act. I mean, he's a – you know, he – this is not a situation where he goes there and sort of forgets about his status and is just living his life out. And, you know, there's no awareness even that he is fugitive. I mean, he up front says, I'm a fugitive. All right. Well, the CI tells you not only – because he doesn't really say, I'm a fugitive. He admits – he says, I'm wanted in New York, and when I go back there I have to sneak in and sneak out. He uses the word sneak, which I argued to the jury was evidence of his state of mind that he knows he's a fugitive if he's sneaking in and sneaking out of New York when he goes back. Thank you. Thank you. The case is hired. We'll stand some minutes. Okay. We'll next hear argument in Howell v. Polk. Thank you.
judges: Kozinski, Tashima, Smith